State
  vs.          } Indictment No.
John G. Miller

December 2, 1927.

CAPOTOSTO, J.  The defendant has been found guilty of robbery by a jury which was selected with the utmost care and was protected from outside influence at great expense to the State and personal sacrifice to the Court. The men upon whom rested the ultimate burden of determining the guilt or innocence of the accused were above the average intelligence of the ordinary jury. They were farmers, business men and technical experts in their particular vocations, trained by practical experience to consider detached facts in their true light when examined with reference to an ultimate conclusion. There was no opportunity for improper interference with the jury's judgment on the one hand and every indication of honesty, common sense and an appreciation of the seriousness of the

task before them, by the jurors individually and collectively, on the other. The decision in this case, therefore, reflects the firm opinion of substantial men who did not hesitate to do their duty, impartially and without fear.

The grounds set forth in defendant's motion for a new trial may be separated into four distinct groups.

In the first group may be included the defendant's request that this Court review its own rulings of law on the admission or exclusion of evidence and in its charge to the jury.

The principle that a trial Court cannot review its own rulings is so elementary that any discussion is superfluous. While it is not the province of this Court to review its own decisions on legal matters, yet it must say that it feels that in its rulings it gave the defendant the widest latitude and protected his rights by exceptions, and otherwise, on every possible occasion.

The second group consists of a complaint against the action of the Presiding Justice in rearranging the assignment of the associate judges without previous notice to the defendant or his attorney, together with serious charges against the integrity of witnesses, of the Attorney General's department, of the jury, and in one instance of the Court itself. Suspecting that these complaints may have been founded on an imagination inflamed by the nation-wide regrettable echoes of the recent past and that they were made with some ulterior purpose rather than an appeal to reason, the Court took the precaution of having the proceedings on the hearing of defendant's motion for a new trial stenographically reported. In case the defendant claims a review of the trial by a higher tribunal, what transpired at this hearing will form a part of the transcript in the case. To cite a single instance, let us turn to the complaint that the defendant was prejudiced by the action of the Court in "visiting" the jury on a Sunday morning. The necessity for or circumstances surrounding this "visit" were unknown to the defendant's attorney until disclosed by the Court in open hearing. As a matter of fact, the defendant complains because the Court on a Sunday morning went to the hotel in East Greenwich where the jury was confined, secured the services of Dr. Taggart of that town for a necessary surgical dressing for one of the jurors, was present while this act was performed by the doctor, and immediately withdrew in company with the physician when his professional services were completed. Because the Court, with personal inconvenience to itself, took the extreme precaution of protecting the health of a juror in an endeavor to prevent a mistrial with its resulting financial loss to the State, and, further, because it sought to restrain anyone who might be called to render the necessary medical aid from any incautious words or conduct, the defendant says that his rights were invaded. Such a claim borders upon that irresponsibility of professional conduct which tends to encourage criminal unrest.

For the purposes of this rescript suffice it to say that indiscriminate accusations and insinuations, recklessly made against everybody and everything in ignorance or disregard of the actual facts, transcend the bounds of propriety. Such inconsiderate conduct, in so far as this Court is concerned, is not excusable by the mere statement of the attorney that "I am doing the best I can for my client." The claims of the defendant in this respect are so imaginary and unfounded on fact that they are dismissed without further comment.

The third group concerns so-called newly discovered evidence tending, as the defendant claims, to impeach the veracity of the State's witness, Mrs. Stone. The evidence now claimed as newly discovered was within the actual or potential power of the defendant to secure immediately before

and during the course of the trial. Initial financial assistance was given to the defendant by the Court to be used for the production of the very evidence which he now describes as newly discovered. Not only was the money so given to him not used according to the terms of a receipt signed by the defendant's attorney at the time he received the money, but no request for further assistance along this line was made by him at any time during the course of the trial. The receipt referred to, given to Sheriff Michael Lynch of Kent County, has been impounded by order of this Court as an integral part of this case. Even if we waive all other consideration, an inspection of the telegrams, letters and affidavits filed in support of this claim reveals such inconsistencies and indefiniteness as to fail to carry conviction. Going a step further and assuming that the so-called newly discovered evidence establishes all that the defendant claims that it proves, still it contradicts the witness, Mrs. Stone upon a collateral matter distantly removed from the date material to the issue. In view of all the circumstances, this evidence is neither newly discovered nor of sufficient weight to disturb the jury's verdict.

The last group consists of the usual ground contained in a motion for a new trial, namely, that the verdict is against the evidence and the weight thereof:

The facts in evidence do not admit of a detailed examination in a necessarily short review. They must be considered as a whole in determining the guilt of the accused. One thing, however, is certain. If we believe the testimony of Mr. Stone, Officer Leavitt and Miss Irene Foley, and disregard completely the testimony of Mrs. Stone, which in all justice to this witness should not be done, then we can not believe the defendant's alibi as to where he was shortly before and at the time that the crime was committed.

The jury did its duty when it refused to reject the testimony of witnesses who were positive, disinterested and even sympathetic towards one against whom duty and conscience compelled them to testify. The defendant's alibi, in view of this positive testimony, became a myth with reference to the time when the offence was committed. This evidence, when considered with other important details in the case, brought out in clear and unmistakable tones the guilt of the defendant. If the jury had returned any verdict other than a verdict of guilty, it would have done violence to its intelligence and participated in the condonation of a public wrong. The conviction of John G. Miller is amply supported by the evidence and leaves this Court in a position where it can unhesitatingly sustain the verdict.

Motion for new trial denied.

For plaintiff: Assistant Attorney General Jackvony.

For defendant: Thomas H. Gardiner.